UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
Salvatore A. Fontana,                                          MEMORANDUM
                                                               & OPINION

                        Plaintiff,

                                                   01CV7002(SLT)(RML)

        -against-


John E. Potter[1],

                        Defendant.
-------------------------------------------------X
TOWNES, U.S.D.J.[2]

      Plaintiff Salvatore Fontana ("Plaintiff" or "Fontana") brings this action, *pro se*, alleging claims of discrimination under the Rehabilitation Act of 1973, as amended 29 U.S.C. § 701 et seq., breach of contract and promissory estoppel under New York law, and violation of principles of ethical conduct. Defendant moves for summary judgment dismissing the Amended Complaint. Based upon all submissions of the parties, and for the reasons stated below, Defendant's motion is granted in full.

---

[1] The original caption named William J. Henderson as defendant. Because the position of Postmaster General has since been filled by John E. Potter, he is now the appropriate Defendant in this action.

[2] On October 19, 2001, this action was referred to Magistrate Judge Bloom for resolution. The referral is hereby withdrawn.

I.   *Facts and Procedural History*

Plaintiff was employed by the United States Postal Service (the "Postal Service") from May 14, 1983 until November 9, 1998 as a distribution clerk. (Def. R. 56.1 Stat. ¶ 1.)  During the course of Plaintiff's employment with Defendant, he was subject to numerous disciplinary actions. (Def. R. 56.1 Stat. ¶¶ 11-25.)  It is undisputed that Plaintiff was frequently late or absent without leave ("AWOL") from work, in addition to other types of absences known as "LWOP" ("leave without pay"), "LWOP in Lieu of SL" ("leave without pay in lieu of sick leave") and "SWOP" (sick without pay). (Def. R. 56.1 Stat. ¶ 5.)

From December 1993 until August 1994,[3] Plaintiff was AWOL on 97 days, on LWOP or SWOP for 9 days, on annual leave for 10 days and was late on 11 days, leaving a total of 18 full work days completed. (Def. R. 56.1 Stat. ¶ 10.) On August 13, 1994, Defendant issued an Official Disciplinary Letter of Warning to Plaintiff, advising him that his attendance needed improvement. (Def. R. 56.1 Stat. ¶ 11.)  However, by August 22, 1994, Plaintiff was again late to work, and was AWOL continuously from August 23 until September 2, 1994. (Def. R. 56.1 Stat. ¶ 12.)  Between September 26 and December 23, 1994, he was on SWOP for 14 days, sick leave for 2 days, LWOP for 4 days, "Court Leave" for 7 days and late 10 days. (Def. R. 56.1 Stat. ¶ 12.)  Between January 2 and April 5, 1995, Plaintiff was AWOL another 17 days and late 8 times. (Def. R. 56.1 Stat. ¶ 12.)  Plaintiff's attendance continued in similar fashion throughout his entire tenure at the Postal Service, notwithstanding a 7-day suspension in April 1995, a second Official Disciplinary Letter of Warning in February 1996, a second 7-day suspension in

---

[3] Because the Postal Service does not maintain all of an employee's files after termination or resignation, the earliest record of Plaintiff's absences and disciplines is for year 1994. (Def. R. 56.1 Stat. ¶¶ 6-10.)

May 1996, a 14-day suspension in September 1996, and a "Last Chance Stipulation Agreement" in June 1997. (Def. R. 56.1 Stat. ¶¶ 13, 16, 18, 20, 23). The Final Notice of Removal was issued to Plaintiff in June 1998. (Def. R. 56.1 Stat. ¶ 25.) The American Postal Workers Union submitted a grievance on Plaintiff's behalf and the matter was submitted to arbitration. (Def. R. 56.1 Stat. ¶ 25.) Plaintiff's resignation soon followed. (Def. R. 56.1 Stat. ¶ 26.) In connection therewith, the parties entered into an agreement (the "Agreement") that provided the following: "I hereby resign from the postal service. I will not reapply for employment in the postal service for one (1) year. Employee discipline will be removed from the records." (Stahl Ex. 2.)

Upon Plaintiff's resignation, he was issued a "Form 50- Notification of Personnel Action," reflecting his resignation and a "terminal leave worksheet," recording the amount of unused leave time remaining on his record, neither of which mentioned his Letters of Warning or suspensions. (Def. R. 56.1 Stat. ¶¶ 30-32.)

It is undisputed that throughout this time, Plaintiff was seeking professional help for depression. (Stahl Decl. Exs. 16, 20, 21, 26, 27; Pl. Mem. of Law Exs. 14-20.) Both parties have submitted letters from Psychiatrists and Psychologists who treated Plaintiff. Some of the letters indicate that Plaintiff's depression was the cause of his attendance problems at work. (Pl. Mem. of Law Exs. 14-20.) However, none of the letters suggest that Plaintiff was unfit to work, or required any adjustment to his work conditions. Indeed, one letter states that "there is no psychiatric reason why Mr. Fontana cannot return to work on a full time basis." (Stahl Decl. Ex. 16.) Two others caution against his suspension. (Stahl Decl. Exs. 20, 21.) One states that Plaintiff is able to return to work and yet another states that "we cannot provide a causal

statement why Mr. Fontana did not go to work for the past several months." (Stahl Decl. Exs. 26, 27.)

A year after his resignation, Plaintiff requested reinstatement and was denied, on account of his prior sick leave balance. According to Helene Moore-Kondek, Human Resources Manager, "as a former Postal employee with fifteen years of service, [Plaintiff] should have approximately 1560 hours of sick leave, earning 104 per year." (Def. R. 56.1 Stat. ¶ 37.) Plaintiff had only 40 unexhausted hours of sick leave remaining. (Def. R. 56.1 Stat. ¶ 33.)

Plaintiff filed a complaint with the Equal Employment Opportunity Compliance center on February 22, 2001, which was dismissed as untimely. Plaintiff thereafter filed the instant complaint, which he later amended (the "Amended Complaint"), alleging discrimination on the basis of his disability (depression), breach of contract, promissory estoppel and violation of principles of ethical conduct. Defendant moves for summary judgment dismissing the Amended Complaint.

II.     *Discussion*

Summary judgment is appropriate where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law." Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)). To be "genuine," an issue of fact must be supported by evidence "such that a reasonable jury could return a verdict for the nonmoving party." Holtz, 258 F.3d at 62. Because the moving party bears the burden of showing that there are no genuine issues of material fact, Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986), "a court must resolve all ambiguities and draw all reasonable inferences against [it]." *Alston v. New York City Transit Authority*, 2003 U.S. Dist. LEXIS 21741, at *4 (S.D.N.Y. 2003) (*quoting* *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

A. *Rehabilitation Act Claim*

Title VII requires Plaintiff to first exhaust his administrative remedies before bringing suit in federal court. The Second Circuit has specifically applied this rule to those alleging employment discrimination under the Rehabilitation Act. *Bruce v. United States Dept. of Justice*, 314 F.3d 71, 74 (2d Cir. 2002). ("An employee suing the federal government under the Rehabilitation Act must exhaust certain administrative remedies before initiating a lawsuit in federal court."); *Boss v. Runyon*, 201 F.3d 178, 181 (2d Cir. 2001); *see also* *Torres v. U.S. Dept. of Veterans Affairs*, 2004 U.S. Dist. LEXIS 5363, at *10 (S.D.N.Y. Mar. 30, 2004) (holding plaintiffs must exhaust their administrative remedies or their claims may be time-barred). Complying with the applicable regulation, 29 C.F.R. § 1614.105(a), would have required Plaintiff to seek EEO counseling within 45 days of the discriminatory acts alleged in his Amended Complaint, to wit, his termination and Defendant's failure to rehire him.

The last possible day that Plaintiff's cause of action arose is December 5, 2000. On that day, Helene Moore-Kondek sent a letter to Plaintiff informing him that his use of sick leave was the reason he was not selected for the position. (Def. R. 56.1 Stat. ¶ 37; Stahl Decl. Ex.34 at 2.) Plaintiff first contacted an EEO counselor on February 22, 2001, 79 days later, and 34 days beyond the limitations period. Even crediting Plaintiff with several days for his receipt of the letter, his Complaint is untimely. Plaintiff avers that he was unaware of the time limit and, given

5

the "liberal pleading standards permitted in *pro se* complaints," <u>Moorish Sci. Temple of Amer., Inc. v. Smith</u>, 693 F.2d 987, 989 (2d Cir. 1982), the Court will consider whether Plaintiff is entitled to an extension of the limitations period.

The Code of Federal Regulations ("CFR") provides, in relevant part::

> The agency or the Commission shall extend the 45-day limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them...that, that despite due to diligence he or she was prevented by circumstances beyond his or her control from contacting a counselor within the time limits, or for other reasons considered sufficient.

29 C.F.R. 1614.105 (a)(2).

By law, all Postal facilities are required to display a poster informing employees of certain basic facts about equal opportunity employment. (Stahl Decl. Ex.4 (Kasuto Decl.) at ¶ 5; Stahl Decl. Exs. 4A-B.) This poster puts the employee on notice of, *inter alia*, the groups protected by Title VII and the 45-day limitations period. (Stahl Decl. Exs. 4A-B.) Defendant has submitted copies of Poster 72 "as they appeared in the International Service Center in 1993 and 2001." (Stahl Decl. Ex. 4 (Kasuto Decl.) at ¶ 5.) However, the version of Poster 72 that appeared in 2001 was incompletely filled out and, unlike the 1993-version, did not inform employees of an address or phone number to contact should they choose to file a complaint. (*Compare* <u>id.</u> at Ex. 4A *with* Ex. 4B.) Under these circumstances, the Court is willing to assume *arguendo* that Plaintiff is entitled to an extension and treat his Amended Complaint as timely.

1. *Prima Facie Case*

To establish a *prima facie* case of employment discrimination under the Rehabilitation Act, Plaintiff must prove that (1) his employer was subject to the statute; (2) that he is an individual with a "disability" within the meaning of the Rehabilitation Act; (3) that he was "otherwise qualified" to perform the essential functions of her job; and (4) that his employer had notice of the plaintiff's disability and failed to provide such accommodation. <u>Lyons v. Legal Aid Soc.</u>, 68, F.3d 1512, 1514 (2d Cir. 1995). Because of the Rehabilitation Act's similarity to the Americans with Disabilities Act, "we look to case law interpreting one statute to assist us in interpreting the other." <u>Alenski v. Potter</u>, 2005 WL 1309043, at *14 (E.D.N.Y. May 18, 2005) (Feuerstein, J.) (*quoting* <u>Francis v. City of Meridien</u>, 129 F.3d 281, 284 n.4 (2d Cir. 1997)).

Because it is undisputed that Defendant is subject to the Rehabilitation Act, the Court need not address that criterion.

        a. *Qualifying disability*

A "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities." 29 C.F.R. 1630.2(g)(1). To meet his *prima facie* burden, Plaintiff must show that he suffers from an impairment that limits a major life activity. <u>Toyota Motor Mfg. v. Williams</u>, 534 U.S. 184, 195 (2002); <u>see also</u> 29 C.F.R. 1630.2(I) ("Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, speaking, breathing, learning and working."). However, Plaintiff does not allege an impairment of any major life activity. Because he does allege that his depression is the cause of his lateness and

absences, the Court will assume the major life activity limited by his alleged impairment is working.

The Code of Federal Regulation ("CFR" or "Code") defines "substantially limits" to mean "unable to perform a major life activity that the average person in the general population can perform or...significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). Therefore, "an impairment may affect an individual's life without becoming disabling." <u>Hazeldine v. Beverage Media, Ltd.</u>, 954 F. Supp. 697, 703 (S.D.N.Y. 1997) (finding obese plaintiff to have failed to show a substantial impairment because, although she was limited in her ability to lift or carry objects, shovel snow, kneel, bend, climb stairs, rake leaves, walk, or perform housework, major life activities were only *affected* and not *substantially limited*).

Working is the only major life activity for which the CFR provides guidelines in interpreting whether a substantial impairment exists, 29 C.F.R. § 1630.2(j)(3)(i), presumably because working, in the context of major life activities, "has been the subject of considerable litigation and judicial analysis." <u>Stewart v. New York City Transit Auth.</u>, 2001 WL 279772, at *4 (E.D.N.Y. Feb. 6, 2001) (Ross, J.). The Code states that, with respect to working, "[t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2 (j)(3)(i). "In

8

light of [this standard]...courts have been quite reluctant to find that individuals are substantially limited in the life activity of working." Stewart, 2001 WL 279772, at *5.

The Supreme Court, interpreting the CFR, held that "to be substantially limited in the major life activity of working...one must be precluded from more than one type of job, a specialized job, or a particular job of choice....[I]f a host of different types of jobs are available, one is not precluded from a broad range of jobs." Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (1999). The Sutton court found that severely myopic airline pilots failed to prove they were substantially limited in the major life activity of working because they only showed that poor vision prevented them from holding one particular position with defendant airline. Id. at 493.

Plaintiff has not identified how he is precluded from a "broad range of jobs in various classes," and, the evidence in the record even indicates that his depression should not have affected his attendance. (See, e.g., Stahl Decl. Ex. 16, 20, 21, 26, 27.) Without any evidence to the contrary, this Court cannot find that Plaintiff is foreclosed from a broad range of jobs and, as such, his claim under the Rehabilitation Act must fail. See Sutton, 527 U.S. at 493 (citing plaintiffs' failure to adequately allege that their poor eyesight substantially limited the major life activity of working because plaintiffs point to only one job they are unable to perform); Muller v. Costello, 187 F.3d 298, 313 (2d Cir. 1999) (finding insufficient evidence for the jury's finding that asthmatic Corrections Officer's ability to work was substantially limited where, inter alia, he "presented no evidence that he was precluded from other jobs other than correctional officer in his geographic area").

B.   *Remaining Claims*

Plaintiff's disability claim, brought under the Rehabilitation Act, provided the Court with subject matter jurisdiction that is no longer present after its dismissal. However, pursuant to 39 U.S.C. § 409(a), this Court retains jurisdiction over Plaintiff's remaining claims. *See* 39 U.S.C. § 409(a) (granting district courts jurisdiction over all actions brought by or against United States Postal Service).

1.   *Breach of Contract*

The parties do not dispute that New York law applies to Plaintiff's breach of contract claim. To establish a *prima facie* case for breach of contract under New York law, Plaintiff must show (1) the existence of a contract; (2) its breach by Defendant; and (3) damages suffered as a result of that breach. *National Market Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004). A plaintiff's failure to prove any one of the elements mandates summary judgment for the defendant. *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88-89 (S.D.N.Y. 1999).

*Definition of "Discipline"*

In exchange for tendering his resignation, Plaintiff received the benefit of having all "employee discipline" removed from his record. However, the term "employee discipline" is not defined in the agreement. Plaintiff claims that it means "letters of discipline and all absences listed on these letters." (Pl. Mem. of Law at 1.) Defendant disputes that the agreement contains an ambiguous term at all, and points to the collective bargaining agreement governing the discipline procedures the Postal Service may issue to an employee. (Def. Mem. of Law at 9.)

"The determination of whether contract language is ambiguous is a question of law." *Werbungs Und Commerz Union Austalt v. Collectors Guild, Ltd.*, 930 F.2d 1021, 1026 (2d Cir. 1991). "An ambiguity exists where the terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's London*, 136 F.3d 82, 86 (2d Cir. 1998); *see also* 11 Williston on Contracts § 30:4 ("To be unambiguous, a contract must be reasonably capable of only one construction.").

Plaintiff's interpretation of the word discipline, *i.e.*, "letters of discipline *and all absences listed on these letters*," is not a reasonable construction of the word "discipline." (Pl. Mem. of Law at 1) (emphasis added). An absence from work is not a discipline. Nor can it be said that any piece of information mentioned in an employee's disciplinary file automatically constitutes a "discipline" against the employee. Though he may have been disciplined on account of his poor attendance, the attendance itself is not a discipline. Therefore, Plaintiff has failed to show Defendant's breach of the Agreement, and this claim must fail.

2. *Promissory Estoppel*

"A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000). The only evidence Plaintiff submits in support of

11

his claim that he was promised to be reinstated after one year is that his union representative, Anna Anderson, told him that she spoke with Harvey Kasuto (the Labor Relations Specialist at Defendant's International Service Center), who made such a promise. (Shahl Decl. Ex. 33 (Fontana Depo. Tr.) at 77.) This statement is double hearsay. Rule 56(e), governing summary judgment motions, requires that

> supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence....The court may permit affidavits to be supplemented or opposed by depositions...[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading.

Fed. R. Civ. P. 56(e). As a result, the court cannot consider this hearsay statement. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by trial court in ruling on [a] motion for summary judgment"); *Fridman v. City of New York*, 183 F. Supp. 2d 642, 646 n.2 (S.D.N.Y. 2002) (granting summary judgment where plaintiff submitted newspaper articles and a City Council hearing transcript and the out-of-court speakers "were neither under oath nor making admissions against their interests"); *Corrigan v. New York Univ. Med. Ctr.*, 606 F. Supp. 345, 348 (S.D.N.Y. 1985) ("Hearsay...cannot be used under Rule 56(e) to stave off summary judgment.").

Even if Plaintiff had adequately alleged the elements of promissory estoppel with the support of admissible evidence, the claim must still be dismissed, as "New York does not recognize promissory estoppel as a valid cause of action when raised in the employment context." *Van Brunt v. Rauschenberg*, 799 F. Supp. 1467, 1473 (S.D.N.Y. 1992). "In New York, promissory estoppel is reserved for a limited class of cases based on unusual circumstances." *Id.* (*quoting Tribune Printing Co. v. 263 Ninth Ave. Realty*, 88 A.D.2d 877

(N.Y. App. Div. 1982)); see also Miller v. Citicorp, 1997 WL 96569, at *10 (S.D.N.Y. Mar. 4, 1997) (*quoting* same); Dalton v. Union Bank of Switzerland, 134 A.D.2d 174, 176 (N.Y. App. Div. 1987) ("The fact that defendant promised plaintiff employment...which induced him to leave his former job and forego the possibility of other employment...does not create a cause of action for promissory estoppel."). Therefore, Plaintiff's promissory estoppel claim must be dismissed for failure to state a claim upon which relief may be granted.

      3. *Violation of Principles of Ethical Conduct for Government Officers and Employees*

Plaintiff's claim under Executive Order 12731 must be dismissed, as is does not provide a private right of action. See Exec. Order No. 12731; 55 FR 42547 at § 504 ("This order is intended only to improve the internal management of the executive branch and is not intended to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States, its agencies, its officers, or any person.").

III. *Conclusion*

Plaintiff's Amended Complaint is dismissed in its entirety. Plaintiff failed to present evidence that he suffers from an impairment that substantially limits a major life activity, barring his claim under the Rehabilitation Act. Additionally, Plaintiff has failed to prove breach of contract, as Defendant did, in fact, remove the letters of discipline from his record. Though Plaintiff's absences were the reason for the disciplinary actions brought against him, the word "discipline" cannot be reasonably construed to include all references to leave time taken by an

13

employee. And, because New York law does not recognize a cause of action for promissory estoppel in the employment context, that claim must too, must be dismissed. Finally, Executive Order 12731 does not provide a private right of action and thus bars Plaintiff's claim under that provision.

**SO ORDERED**.

                                                                                        _____S/_____
                                                                                        SANDRA L. TOWNES
Dated: August 24, 2005            UNITED STATES DISTRICT JUDGE
       Brooklyn, NY